# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-0128V

|  |  |
|---|---|
| JOAN STEEDE,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: February 5, 2026 |

*Patricia L. Hall, Williams McCarthy, LLC, Rockford, IL, for Petitioner.*

*Alexis B. Babcock, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On February 8, 2022, Joan Steede filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered Guillain-Barré syndrome ("GBS"), a defined Table injury, after receiving an influenza ("flu") vaccine on September 25, 2019. Petition at 1, ¶¶ 2, 20, 26.

Although the claim was unsuccessful, I find it possessed sufficient reasonable basis to permit an award of attorney's fees. A reduction in the amount of fees and costs to be awarded is, however, appropriate, for the reason stated below.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I.      **Relevant Procedural History**

After concluding that the record as it stood did not confirm that Petitioner was ever diagnosed with or treated for GBS (as defined by the Table), I issued an order directing Petitioner to show cause why her claim should not be dismissed. Order to Show Cause, issued Sept. 5, 2023, at 5, ECF No. 31. In response, Petitioner moved for a decision dismissing the claim (ECF No. 32), and I issued a decision that same day (ECF No. 33).

On February 15, 2024, Petitioner filed a request for an award of $11,748.49 in attorney's fees and costs. Motion for Attorney's Fees and Costs, ECF No. 37. She maintains that she "brought her claim before this Court in good faith and based on a reasonable belief that her injuries were the result of the subject vaccination." *Id.* at ¶ 1; *see* Section 15(e)(1).

Respondent reacted to the motion on February 16, 2024, stating that he defers to my discretion "as to whether [P]etitioner has established a reasonable basis for her claim . . . [but] is satisfied the other statutory requirements for an award of attorneys' fees and costs are met in this case." Respondent's Response to Petitioner's Application for Attorneys' Fees and Costs at 2, ECF No. 38. And Petitioner filed no reply thereafter.

II.     **Reasonable Basis**

A.      **Legal Standard**

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not

automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at \*6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at \*1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*, *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at \*5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

### B.    Existence of Reasonable Basis

The medical records show that Petitioner, 50 years old and a legal assistant at the time of vaccination, had a history of hypertension, morbid obesity, chronic right knee pain, an episode of left knee pain, abdominal discomfort – especially when walking, and common illnesses. Ex. 5 at 6-8, 13, 16-17, 22, 24 (earlier primary care provider ("PCP") records). On September 25, 2019, she received treatment for a rash on her left leg, bilateral pain and swelling in both lower legs, and right knee pain. *Id.* at 6-8; Ex. 6 at 55, 74-75, 77, 101. She received the flu vaccine alleged as causal at this visit. Ex. 6 at 61-62.

Three days later (September 28, 2019), Petitioner visited the emergency room complaining of right lateral back pain which radiated to her buttocks. Ex. 1 at 13. She attributed the pain to a new mattress she recently purchased. *Id.* Petitioner was diagnosed with sciatica[4] of the right side, prescribed pain medication and a muscle relaxer, and instructed to follow-up with her PCP. *Id.* at 16-17.

Returning to the hospital by ambulance the next day, Petitioner reported that the weakness, numbness, and pain she had just experienced the day before was now present in both legs. Ex. 2 at 157. She also reported falling when getting out of the car the previous night and being unable to urinate since the previous night. *Id.* After spending a week in the hospital, on October 5, 2019, Petitioner was transferred to an inpatient rehabilitation facility where she remained until October 15, 2019. Ex. 3 at 129-130.

Petitioner maintains that on October 7, 2019, while at the inpatient rehabilitation facility, she "was told that [her] symptoms were the result of Guillain-Barre Syndrome." Ex. 7 at ¶ 21; *accord.* Petition at 1, ¶ 15. She informed her PCP of this diagnosis on October 29, 2019, when seeking a handicap placard – stating that she had no diagnosis until at the inpatient rehabilitation facility when "[s]he was told that this was probably guialme [sic] barre from the flu shot." Ex. 6 at 45. In this and later records, the PCP included a diagnosis of GBS. *Id.* at 23-25, 36, 42, 50. However, he appears to be repeating the diagnosis told to him by Petitioner. There is no evidence in the medical records, such as the results of any examination or testing, indicating that he made, or even agreed with, the diagnosis. *See id.* at 23-52. During PT sessions beginning in

---

[4] Sciatica is "a syndrome characterized by pain radiating from the back into the buttock and along the posterior or lateral aspect of the lower limb." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (hereinafter "DORLAND'S") at 1678 (32th ed. 2012).

November 2019, Petitioner also indicated she "[w]as officially diagnosed with Gullian Barre Syndrome" while at the inpatient rehabilitation facility. Ex. 2 at 104.

In the hospital and rehabilitation medical records, the only mention of GBS is its inclusion in a list of potential differential diagnoses[5] by the neurologist who examined Petitioner when admitted to the hospital on September 29, 2019. Ex. 2 at 274 (noting that the following diagnoses needed to be ruled out: thoracic spine stenosis, cervical spine stenosis, epidural abscess, anterior spinal artery stenosis, CVA, interhemispheric SOL, GBS, PMR, and myositis). The neurologist ordered testing and deferred ordering IVIG or plasmapheresis as Petitioner's had "no worsening of her symptoms." *Id.* at 275.

Following testing, which included a lumbar puncture and EMG, that showed no evidence supportive of a GBS diagnosis,[6] and continued improvements without treatment, the neurologist updated Petitioner's differential diagnoses to an unknown etiology or conversion disorder.[7] Ex. 2 at 233. When transferred to the inpatient rehabilitation facility, Petitioner was described as suffering from "[b]ilateral lower extremity weakness with urinary retention." Ex. 2 at 165. Testing revealed no clear etiology for Petitioner's symptoms, including a lack of evidence of a demyelinating disease, polyneuropathy, or cord compression. *Id.* When discharged from inpatient rehabilitation, Petitioner was assessed as suffering from lower extremity weakness, bladder dysfunction, piriformis syndrome,[8] and a urinary tract infection. Ex. 3 at 155. Once again, it was noted that there was no clear etiology for her weakness, and no evidence of a demyelinating peripheral neuropathy. *Id.*

---

[5] "Differential diagnosis is a systematic process used to identify the proper diagnosis from a set of possible competing diagnoses." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6994315/ (last visited on Aug. 14, 2023).

[6] Petitioner's lumbar puncture revealed a normal white blood cell count, and only a slightly high red blood cell count. Ex. 2 at 264, 281-282. Although the full test was not administered, "[t]he limited nerve conduction/EMG of the bilateral lower extremity were normal . . . [and] [t]here was no evidence of any motor polyneuropathy noted." *Id.* at 277.

[7] Conversion disorder is "a mental disorder characterized by conversion symptoms (loss or alteration of voluntary motor or sensory functioning suggesting physical illness, such as seizures, paralysis, dyskinesia, anesthesia, blindness, or aphonia) having no demonstrable physiological basis and whose physiological basis is suggested by (1) exacerbation of symptoms at times of psychological stress, (2) relief from tension or inner conflicts (primary gain) provided by the symptoms, or (3) secondary gains (support, attention, avoidance of unpleasant responsibilities) provided by the symptoms." DORLAND'S at 549.

[8] Piriformis syndrome (also known as levator ani syndrome) is "a functional pain syndrome occurring chiefly in women under 45 years of age and consisting of chronic or recurrent episodes of vague, dull aching or pressure high in the rectum that last at least 20 minutes; the pain is often worse when sitting." DORLAND'S at 1837, 1843.

Although the record reveals a dearth of evidence supporting a GBS diagnosis (as defined by the Table criteria), other evidence provides objective support for the claim. Petitioner's symptoms mirrored those often attributable to GBS; GBS was temporarily included in the differential diagnosis; and her PCP accepted the possibility, based on an oral history, that GBS might explain Petitioner's injury. All of this is sufficient to satisfy the far lower standard of reasonable basis. And there is no other basis for a denial of fees, despite the claim's lack of success. Therefore, the only remaining question is the appropriate amount of the attorney's fees and costs to be awarded.

### III.     Appropriate Amount to be Awarded

#### A.     Legal Standard

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

#### B.     Attorney's Fees and Costs

I have reviewed the billing records submitted with Petitioner's request. In my experience, the request for attorney's fees appears reasonable, and I find no cause to reduce the requested hours or rates. Petitioner billed a reasonable amount of time using hourly rates previously approved for all attorneys and paralegals performing this work. ECF No. 37-1 at 3-4, 6-9.

However, I find that Petitioner has not substantiated many of the litigation costs she seeks with the required supporting documentation, such as an invoice or proof of payment. *See* ECF No. 37-1 at 5. When petitioners fail to provide appropriate documentation to substantiate a requested cost, special masters have refrained from awarding the relevant sum. *See, e.g., Gardner-Cook v. Sec'y of Health & Hum. Servs.*,

No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). And I have provided this specific guidance to Petitioner's counsel in a prior decision. *See, Donnewald v. Sec'y of Health & Hum. Servs.,* No. 22-0313V, 2024 WL 3101679, at *2 (Fed. Cl. Spec. Mstr. May 21, 2024).

I will allow reimbursement for the Court's filing fee of $402.00, since the fact of that expense is clearly substantiated by the case's docket report, but I disallow reimbursement for all other unsubstantiated costs herein. This reduces the total amount of litigation costs to be awarded by **$634.49.**

## Conclusion

I have determined that an award of reasonable attorney's fees and costs is appropriate in this case even though compensation was not awarded. Section 15(e)(1). Accordingly, I hereby GRANT Petitioner's Motion for attorney's fees and costs and award a total of **$11,114.00 (representing $10,712.00 in fees and $402.00 in costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.** The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.